UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSH ROBINSON,<br><br>Defendant. | CASE NO. CR18-0116JLR<br><br>ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

## I. INTRODUCTION

Before the court is Defendant Josh Robinson's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). (Mot. (Dkt. # 55); *see also* Reply (Dkt. # 65).) Plaintiff United States of America ("the Government") opposes Mr. Robinson's motion. (Resp. (Dkt. # 61).) The court has considered Mr. Robinson's motion, the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised, the court DENIES Mr. Robinson's motion.

## II. BACKGROUND

The investigation and prosecution of Mr. Robinson began when the Seattle Police Department ("SPD") investigated the sharing of child pornography on a peer-to-peer ("P2P") file-sharing network in March 2018. (*See* Presentence Investigation Report ("PSR") (Dkt. # 43) (sealed) ¶ 7.) SPD eventually forwarded the investigation to Homeland Security Investigations ("HSI") when Mr. Robinson distributed child pornography to SPD. (*See id.*)

Further investigation by HSI revealed that Mr. Robinson used electronic devices to download, distribute, and store visual depictions of minors engaged in sexually explicit conduct between at least May 2013 and May 2018. (*See id.* ¶ 8.) A search warrant executed at Mr. Robinson's home in May 2018 revealed that Mr. Robinson collected and stored at least 11,000 images and videos of actual minors engaged in sexually explicit conduct, including visual depictions of prepubescent minors, infants, and toddlers engaged in sexual acts—including displays of sadistic and masochistic abuse—with other minors and with adults. (*See id.*)

Mr. Robinson was arrested and charged with one count of receipt of child pornography. (*See* Indictment (Dkt. # 10).) On November 27, 2018, Mr. Robinson pleaded guilty to that charge, which carried a mandatory minimum five-year prison sentence. (*See* Plea Agreement (Dkt. # 34) at 1-2.) As a part of the agreement, Mr. Robinson agreed to submit to and share the results of a psychosexual examination and sexual history polygraph. (*Id.*)

//

Case 2:18-cr-00116-JLR   Document 70   Filed 06/23/20   Page 3 of 12

Mr. Robinson has one 30-year-old conviction for child molestation but has no other instances of physical sexual abuse on his record. (*See* PSR ¶¶ 30-35.) Further, in October 2018, Mr. Robinson participated in a psychosexual examination that included polygraph testing during which he denied any hands-on sexual contact with a person under the age of 18 since he turned 18 years old and denied any unreported, illegal sexual contact. (*See* Mot., Ex. B (Dkt. # 57-1) at 19.) In both instances, the polygraph reflected "no deception." (*Id.*) The clinical social worker who performed Mr. Robinson's evaluation concluded that Mr. Robinson's prognosis was positive, but also noted that his static re-offense risk factors place him in a "moderate-high risk category," his dynamic risk factors place him in a "moderate risk category," and his score on the Child Pornography Offender Risk Tool places him in a "moderate risk category." (*See id.* at 28-29.) After his evaluation, Mr. Robinson began seeing a mental health therapist, Lonnie Kaman, on a weekly basis. (*See id.* at 2-3.) In March 2019, Ms. Kaman noted that Mr. Robinson had been "making steady progress in treatment in understanding his criminal behavior and the impact on the victims." (*Id.* at 3.)

On May 10, 2018, Mr. Robinson was released on bond and placed under pretrial supervision with additional conditions pending adjudication of the charges against him. (*See* Appearance Bond (Dkt. # 9) at 1-3.) One of those conditions required that Mr. Robinson refrain from using, possessing, or having access to a computer or computer components or devices which enable access to the internet. (*See id.* at 1.) One month after he was released on bond, Mr. Robinson violated the terms of his bond when his pretrial supervision officer discovered during a routine home inspection that Mr.

ORDER - 3

Robinson had internet-capable devices—including two smartphones, a tablet, and an Xbox 360—in his home that he had not reported. (*See* Release Status Rpt. (Dkt. # 42) (sealed) at 3.) Mr. Robinson's release on bond otherwise complied with the terms of his bond. (*See id.*)

On April 8, 2019, the court sentenced Mr. Robinson to 60 months of imprisonment and 15 years of supervised release. (Judgment (Dkt. # 47) at 2-3.) He began serving his sentence at Federal Corrections Institute – Terminal Island ("FCI-Terminal Island") on May 21, 2019, and had served slightly over a year of that sentence at the time he filed his motion. Mr. Robinson is 48 years old and his Bureau of Prisons ("BOP") medical records reflect that he suffers from obesity, type 2 diabetes, and hypertension. (*See* Mot., Ex. C (Dkt. # 57-2) (sealed) at 23, 62.)

BOP reports a significant outbreak of the Coronavirus Disease 2019 ("COVID-19") at FCI-Terminal Island, which at the court's last review included eight currently-positive inmates, three currently-positive staff members, nine inmate deaths, 674 recovered inmates, and 14 recovered staff members. *See https://www.bop.gov/coronavirus/* (last visited on June 22, 2020).[1] The Government represents that all inmates at FCI-Terminal Island have been tested for COVID-19 at least

---

[1] The court takes judicial notice of BOP's COVID-19 data for FCI-Terminal Island. *See U.S., ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1008 (C.D. Cal. 2015), *aff'd sub nom. United States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ("Under Rule 201, the court can take judicial notice of '[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by governmental agencies."); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 999 (9th Cir. 2010) (taking judicial notice of information on the websites of two school districts); *Paralyzed Veterans of Am. v. McPherson*, No. C 06-4670, 2008 WL 4183981, *5 (N.D. Cal. Sept. 8, 2008) ("Information on government agency websites has often been treated as properly subject to judicial notice").

1   once. (Resp. at 12.) On April 28, 2020, Mr. Robinson tested positive for the virus that

2   causes COVID-19. (Resp., Ex. E (Dkt. # 63-1) (sealed) at 12.) His case was

3   asymptomatic, however, and by May 10, 2020, BOP designated his condition as

4   "Resolved." (*See id.*; *see also* Mot. at 6 (acknowledging that Mr. Robinson's case of

5   COVID-19 was asymptomatic).)

6   Mr. Robinson emailed a request for compassionate release to the Warden at

7   FCI-Terminal Island on May 4, 2020. (Mot., Ex. 1 (Dkt. # 55-1).) On June 4, 2020, Mr.

8   Robinson submitted his present motion for compassionate release pursuant to 18 U.S.C.

9   § 3582(c)(1) to this court. (*See generally* Mot.) The court now considers Mr. Robinson's

10  motion.

## III.   ANALYSIS

**A.   Standard for Compassionate Release**

13  "'[A] judgment of conviction that includes [a sentence of imprisonment]

14  constitutes a final judgment' and may not be modified by a district court except in limited

15  circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in

16  original; quoting 18 U.S.C. § 3582(b)). As relevant to Mr. Robinson's motion, those

17  circumstances are set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21,

18  2018, the First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A) to permit an inmate,

19  who satisfies certain statutorily mandated administrative exhaustion procedures, to file a

20  motion with the district court for compassionate release. *See* 18 U.S.C. § 3582(c)(1)(A).

21  As amended, the statute now provides:

22  //

(c) **Modification of an imposed term of imprisonment**.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

(A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,* may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction;

\*\*\*\*\*\*\*\*\*\*

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i) (italics added indicating the portion of the statute the First Step Act amended).

Thus, the statute now provides the court with authority to reduce a sentence upon the motion of a defendant if three conditions are met: (1) the inmate has either exhausted his or her administrative appeal rights of BOP's failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request;[2] (2) the inmate has established "extraordinary and compelling reasons" for the

//

---

[2] The parties agree that Mr. Robinson has complied with the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) because 30 days had expired without response from the Warden at FCI-Terminal Island by the time Mr. Robinson filed his motion. (*See* Mot. at 3; Resp. at 7.)

ORDER - 6

requested sentence reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement. *See id.*

The Sentencing Commission's policy statement referenced in 18 U.S.C. § 3582(c)(1)(A)(i) is found in the United States Sentencing Guidelines ("USSG") § 1B1.13.[3] The policy statement provides in relevant part:

> [T]he court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction; or
>
> (B) The defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

USSG § 1B1.13. Because Mr. Robinson is not at least 70 years old and was not sentenced under 18 U.S.C. § 3559(c), only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to Mr. Robinson's motion. Thus, under the policy statement, Mr. Robinson is entitled to relief if he demonstrates that (1)

---

[3] The Sentencing Commission is statutorily required to create the referenced policy statement. *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

ORDER - 7

extraordinary and compelling reasons warrant a sentence reduction, (2) he is not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A)(2), (3).

The Sentencing Commission's application notes to this policy statement provide further guidance. Application Note 1 to USSG § 1B1.13 provides that "extraordinary and compelling reasons" for a sentence reduction exist under the following conditions:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. 1B1.13 cmt. n.1.[4]

---

[4] In subparts (B) and (C), the application note also addresses family circumstances and circumstances involving defendants who are at least 65 years old—neither of which are applicable to Mr. Robinson's motion. *See id.* In subpart (D), the application note also provides that the Director of BOP may determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *See id.* Mr. Robinson does not contend that the Director of BOP has determined that an extraordinary or compelling reason for a reduction in sentence exists in his case.

**B.      The United States Sentencing Commission's Policy Statement**

Even if Mr. Robinson could demonstrate that his medical conditions, in combination with the COVID-19 pandemic and the current conditions at FCI-Terminal Island, constitute "[e]xtraordinary and compelling reasons" warranting his release under 18 U.S.C. § 3582(c)(1)(A)(i), he still must show that his release is consistent with the United States Sentencing Commission's policy statement.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); *see also Riley v. United States*, No. C19-1522JLR, 2020 WL 1819838, at *5 (W.D. Wash. Apr. 10, 2020).  Mr. Robinson fails to make that showing because he cannot demonstrate that he "is not a danger to the safety of any other person or to the community" under subsection (2) of USSG § 1B1.13.[5]  *See United States v. Gotti*, --- F. Supp. 3d ----, 2020 WL 497987, at *6 (Jan. 15, 2020) (concluding that even if a federal prisoner had met his burden of showing eligibility for compassionate release due to his compromised medical condition, the court is not required to release him if he continues to be a danger to community).

In making a determination concerning whether the prisoner continues to be a danger to the safety of any other person or to the community, subsection (2) of USSG § 1B1.13 points the court to the factors listed in 18 U.S.C. § 3142(g).  *See* USSG § 1B1.13.  Under section 3142(g), relevant factors that the court should consider here

---

[5] Because the court denies Mr. Robinson's motion on the grounds that he cannot establish that he is no longer a danger to the community, the court declines to consider whether Mr. Robinson's circumstances and conditions of confinement constitute "extraordinary and compelling circumstances" warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) or whether Mr. Robinson's release would be consistent with the other requirements of USSG § 1B1.13.

ORDER - 9

include: the nature and circumstances of the crime charged, including whether the offense involves a minor victim; and the defendant's history and characteristics, including his character, his physical and mental condition, his family and community ties, his past conduct, and his criminal history. *See* 18 U.S.C. § 3142(g). As discussed below, a review of these factors precludes the court from finding that Mr. Robinson is not a danger to the safety of others and the community.

Mr. Robinson makes the bold claim that he represents no danger to the community if released. (Mot. at 20 ("Mr. Robinson does not pose a danger to the community if released.").) The court cannot agree. At the time of his arrest, Mr. Robinson was in possession of thousands of video files and images of child pornography that he had spent years collecting, and he was engaged in the distribution of those files via P2P networks. (*See* PSR ¶¶ 7-8.) Sadly, the record reveals that these images and files were particularly vile. Mr. Robinson's plea agreement acknowledged that the following depictions were amongst the ones that HSI seized from his home:

> **File Name: 000014.mpg   2ZIEXACDODAGNFAQK77DFK6EUR2FQWHN**
> This color video file with no sound is approximately 50 seconds in length and a compilation video. This video depicts a partially naked pre-pubescent female or girl lying on her side, while being anally penetrated by a naked adult male's penis and while being behind her. At 00:04 the video changes to depict a pre-pubescent girl bent over on her knees being anally penetrated by a naked adult male's penis. At 00:46 the video changes to depict a naked pre-pubescent girl lying on her back spreading her buttocks, while being anally penetrated by a naked adult male's penis. The two young girls depicted are between the ages of five and ten years old.

//

//

> **File Name: 41724.jpg**
> This image depicts a female who is approximately four to five years old. She is nude from the waist down and lying on a bed. An adult male is touching his erect penis to her vagina.

(Plea Agmt. at 5 ¶ 8.) Moreover, although the court agrees with Mr. Robinson that it should not place undue emphasis on Mr. Robinson's 30-year-old molestation charge, it would be equally improper for the court to cast that incident aside entirely given that Mr. Robinson's conduct on the current charge indicates that he continues to struggle with deviant behavior.

Even a cursory glance through the dozens of pages of victim impact statements on file with the court reveals that Mr. Robinson's conduct is, without a doubt, a danger to the community. (*See* Victim Impact Statements (Dkt. # 41) (sealed).) The court is hopeful that Mr. Robinson will build off the positive prognosis that the clinical social worker identified during his psychosexual evaluation and off the positive changes identified by Ms. Kaman after therapy so that Mr. Robinson may avoid re-offending and causing additional harm upon release. (*See* Mot., Ex. B at 2-3, 28-29.) However, the court also notes that Mr. Robinson's evaluation placed his static and dynamic risk factors for re-offense at moderate to moderate-high levels. (*See id.* at 28-29.) The court cannot conclude that that risk has been lessened significantly after Mr. Robinson has been incarcerated for slightly over a year on his five-year sentence.

Further, Mr. Robinson's requested relief—home confinement or admission to a residential reentry facility—would not necessarily lessen his danger to the community. Mr. Robinson's crime does not require anything more than access to the internet. Mr.

ORDER - 11

1 Robinson fails to explain how any of his proposed release placements would prevent him from accessing the internet. (*See* Mot. at 21; Reply at 9-10.) In today's society, smartphones, tablets, laptops, smart TVs, and countless other devices are ubiquitous. Therefore, it would be extremely difficult to place Mr. Robinson in a setting that would eliminate his ability to engage in his prior criminal conduct. Indeed, although Mr. Robinson claims that his performance on supervision should weigh in his favor (*see* Mot. at 21), the court notes that Mr. Robinson violated the condition requiring that he refrain from using, possessing, or having access to devices which enable access to the internet while he was on supervision. (*See* Release Status Rpt. at 3.) This incident underscores how difficult it would be to monitor Mr. Robinson's behavior upon release.

Based upon the foregoing analysis, the court finds that Mr. Robinson would be a danger to the community if he were released. Accordingly, he cannot satisfy the requirements for compassionate release, and the court DENIES his motion.

## IV. CONCLUSION

For the reasons set forth above, the court DENIES Mr. Robinson's motion for compassionate release (Dkt. # 55).

Dated this 23rd day of June, 2020.

JAMES L. ROBART
United States District Judge